NATALIE K. WIGHT, OSB #035576
United States Attorney
District of Oregon
**JUDITH R. HARPER, OSB #903260**
**JEFFREY S. SWEET, OSB #994183**
Assistant United States Attorneys
Judi.Harper@usdoj.gov
310 West Sixth Street
Medford, OR  97501
Telephone:  (541) 776-3604
Attorneys for United States of America

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA** | 1:19-cr-00454-MC |
| v. | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **GREGORY LEE RODVELT,** | |
| Defendant. | |

      Defendant Gregory Rodvelt set out to hurt someone.  He succeeded.  Rodvelt set up an elaborate trap to shoot anyone who came in the front door of his former house.  Unfortunately, it worked all too well, and he hit an FBI agent—luckily the nearby OSP bomb technicians escaped being hit.  Vindictive, spiteful, and fueled by bitter anger, Rodvelt set out to punish anyone who came onto his property.  He should receive a 63-month sentence on count 1, the low end of the applicable guideline range, to be served consecutively to a 120-month sentence on count 2, for a total of 183 months, followed by 3 years supervised release.

/ / /

**Government's Sentencing Memorandum**                                                                                                 **Page 1**

**Factual Background**

**The Offense Conduct**

In August 2018, Gregory Rodvelt was living in Arizona and was on pretrial release for Arizona state charges of aggravated assault with a deadly weapon for pointing an assault-style rifle at a person during an argument (PSR ¶ 7, 39). When he was arrested on the Arizona offense, he was ordered out of the car and refused to comply. (*Id.*) The SWAT team had to be called out to assist; removing him from the vehicle ultimately required the use of armored vehicle to deploy CS gas into the vehicle. (*Id.*)

Rodvelt convinced the state court to allow him to travel to Oregon to deal with legal proceedings related to his former property in Oregon (PSR ¶ 7-8). He made it too late; by the time he arrived, the receiver had been appointed and intended to sell the property. (*Id.*)

On August 29, 2019, the receiver went on the property to prepare it for sale, which angered Rodvelt. The next day, when the receiver and his investigator returned to the property, they hit spike strips in the driveway. Faced with tire damage and a sign warning of improvised munitions, the receiver left and contacted law enforcement for assistance. (*Id*).

On September 7, 2018, Oregon State Police Bomb Technicians, and an FBI Special Agent Bomb Technician, arrived at the property to assist in clearing it and found a minivan with an animal trap blocking the front gate (PSR ¶ 10). There was also an animal trap on the gate leading to the driveway. (*Id*). On the approach to the residence, agents saw a hot tub sitting on its side near another gate. (*Id*). They determined that if the gate were opened, it would trigger the hot tub rolling toward the gate. (*Id*).

In the garage, they found a modified rat trap that would be triggered by the garage door opening. It was only much later that they saw buckshot and shotgun wadding near the rat trap, and they realized that the trap appeared to have been triggered (PSR ¶10-11).

Agents next approached the house. They noticed that the house windows were barred from within and the rear door was secured by a heavy-duty security door (PSR ¶ 11). Agents used an explosive charge to breach the front door (PSR ¶ 12). While entering, one of them moved a wheelchair which triggered a homemade shotgun device. (*Id*). There was a loud ear-piercing bang and explosion sound. (Tr. at 380, 257, 235). One bomb technician was hit with something when the blast went off but it did not penetrate his clothing. (Tr. at 256-57). Another bomb technician was disoriented by the blast. (PSR ¶ 12).

A pellet from the discharged shotgun shell hit the FBI agent in his lower leg. (*Id*). Initially, blood was pumping out of his leg. (Tr. at 417). He was taken to the hospital and an X-ray showed a foreign object, the size of a pellet, embedded in his left leg below the knee. (PSR ¶ 17). The agent testified that the loud bang caused his ears to ring for the rest of the day. (Tr. at 441).

Agents later determined that there was a hidden line of monofilament tied to the wheelchair and the rat trap device. (Tr. at 450). The device was effectively a homemade shotgun, with a metal pipe serving as a barrel and a rat trap as a trigger. When the device was triggered, a .410 shotgun shell discharged, and the device was directed at the front door.

That same day, FBI agents interviewed Rodvelt in Arizona (PSR ¶ 13). Rodvelt said he set up the hot tub trap, the spike strip to flatten tires, as well as other tripwires, though he would not say what the others triggered. (*Id*).

**Government's Sentencing Memorandum**                                                                 **Page 3**

Rodvelt was taken into state custody the following day (PSR ¶ 14). Agents interviewed him and asked if there were other threats on his property. (*Id*). He said, "I wouldn't race right in." (*Id*). He also asked law enforcement to wait 24 hours to go on to the property so he could call someone. (*Id*). And after being transported, Rodvelt told an agent that a shotgun shell rat trap was "set to shoot up your feet" in the garage. (Tr. at 542, 550).

### The Charges

Rodvelt was convicted at trial of two charges, Count one—Assault on a Federal Officer in violation of 18 U.S.C. §11(a)(1) and (b); Count two—Using a Firearm During and in Relation to a Crime of Violence in violation of 18 U.S.C. § 924(c)(1)(A)(iii); Count two carries a 120-month mandatory minimum to be run consecutive to any other sentence.

### Guideline Computations

The government and the PSR writer recommend the following guideline computations:

| Enhancement | Government's Position |
|---|---|
| Base offense level—<br>USSG § 2A2.2 | 14 |
| Specific Offense Characteristic—<br>U.S.S.G. § 2A2.2(b)(1) (Assault involved more than minimal planning) | +2 |
| Specific Offense Characteristic—<br>U.S.S.G. § 2A2.2(b)(3)(B) (victim sustained serious bodily injury) | +5 |
| Specific Offense Characteristic—<br>U.S.S.G. § 2G2.2(b)(4) (convicted under 18 USC Section 111(b)) | +2 |
| Adjustment— U.S.S.G. § 3C1.1 (obstruction of justice) | +2 |
| **Total offense level** | **25** |
| **Resulting Guideline Range** | **63-78 months** |

**Government's Sentencing Memorandum**                                                         **Page 4**

**Contested Guideline Issues**

1. <u>Victim Sustained Serious Bodily Injury</u>

Application Note 1(M) to USSG Section 1B1.1 defines serious bodily injury as an "injury involving extreme physical pain or protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization or physical rehabilitation." Serious bodily injury was addressed in *United States v. Corbin,* 972 F. 2d 271 (9th Cir. 1992). In *Corbin*, the victim was hit on the head twice with a metal object, causing a laceration which required more than 25 sutures, and the court found that there was serious bodily injury.

Here, AV1 suffered serious bodily injury. He experienced bleeding, had significant pain and sought medical treatment. The injury collapsed a vein and AV1 had ongoing occasional pain from the shot.

The treating ER physician testified that there was a 3-millimeter metallic foreign body in AV1's leg. (PSR ¶ 17). He said that the object transected AV1's greater saphenous vein, causing it to collapse. (PSR ¶ 12). The physician considered removing the object but was concerned about damaging adjacent structures in the removal process, so he left it in AV1's leg. (*Id)*. An enhancement for serious bodily injury is warranted.

2. <u>Rodvelt Obstructed Justice</u>

Rodvelt lied when he testified that the traps in his garage were for weasels and rats. Rodvelt testified that when he left the property for Arizona, he did not set up anything to stop people from coming on the property. (PSR ¶ 15a). He said the rat trap in the house had "been there for six, eight months." (*Id*). Rodvelt claimed he just "put new bait on and set it up so that it could shoot where the new scat was … weasel droppings were". (*Id*). He testified that, "It was

set up to –whenever the weasel, rat, or critter grabbed the chipped beef, it would pull down the string and get shot right in the back from where the trap was." (*Id*).

When testifying about the trap device at the garage door, Rodvelt described the trap as a "deal" he would use with blank cartridges that would go "bang" when you opened the door. (PSR ¶ 15b). Rodvelt testified that there was "no rat trap deal in the garage' that "all it could do would be to shoot a blank." (*Id*).

The evidence produced at trial contradicts Rodvelt's claims. Throughout his property, traps were set at human entry points, and were set because Rodvelt was angry that the property was being sold and that the receiver had accessed the property. And Rodvelt's own words to the FBI about a device being set up to "shoot at your feet" belies his trial testimony. The jury ultimately found Rodvelt's testimony not credible, and convicted him.

## Recommended Sentence

While most 72-year-old men with health issues do not pose a danger to others, the same cannot be said of Gregory Rodvelt. He collects grievances, stews on perceived wrongs and has a combative personality. Rodvelt seems to relish retaliation and retribution, and his willingness to resort to violence is alarming. It is his mindset that makes him dangerous, not his physical abilities.

The traps he laid were not hastily done in an impulsive fit of anger, but rather the deliberate product of hours of work and methodical planning. Both rat traps had shotgun shells in them, not blanks; these were set to injure, not to deter. Fortunately, the garage trap with buckshot—the one that Rodvelt warned the FBI about—had discharged prior to law enforcement arriving.

Rodvelt's crimes had nothing to do with rats or weasels and everything to do with the self-righteous rage of a self-centered man. Rodvelt lost the Dreamhill Drive property, and if he couldn't have it, no one could. Even if it meant hurting somebody. This is Rodvelt's third conviction for a violent crime—there is no reason to think it will be his last.

A low-end guideline sentence of 63 months on count one consecutive to the 120-month mandatory minimum sentence on count two takes into account the aggravating factors and Rodvelt's age and health conditions. A 183-month sentence is sufficient, but not greater than necessary, to protect the community.

## Conclusion

Based on the foregoing, the government recommends that this Court impose a 183-month sentence, followed by a three-year term of supervised release subject to the standard and special conditions recommended by the PSR writer; and a $200 fee.

Dated: October 25, 2023

Respectfully submitted,

NATALIE K. WIGHT
United States Attorney

*s/ Judith R. Harper*
JUDITH R. HARPER, OSB #903260
Assistant United States Attorney